IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC A. QUALLS,**                          CASE NO. 2:13-CV-0263

    **Petitioner,**

v.                                        **JUDGE ALGENON L. MARBLEY**
                                             **Magistrate Judge Kemp**
**WARDEN, CHILLICOTHE**
**CORRECTIONAL INSTITUTION,**

    **Respondent.**

### REPORT AND RECOMMENDATION

Petitioner Eric A. Qualls, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This case is before the Court to consider the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court, which states that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief ... the judge must dismiss the petition ...." For the following reasons, it will be recommended that the petition be dismissed because it was not filed within the applicable one-year limitations period set forth in 28 U.S.C. §2244(d)(1). Additionally, the Court **DENIES** petitioner's motion to proceed *in forma pauperis* (Doc. 1) because he has paid the required $5.00 filing fee.

### I. PROCEDURAL HISTORY

This case has a lengthy procedural history in the state courts, and it is necessary to set it out in some detail since the statute of limitations issue depends upon what occurred in state court and when it happened. These facts are contained either in the petition itself,

which does a good job of laying out the procedural history of the case, or in decisions from the Ohio state courts in petitioner's case which can be found in the public record

The case comes to this Court by way of a state prosecution which began in the Meigs County Court of Common Pleas. In that court, petitioner pleaded guilty to charges of aggravated murder with a firearm specification and kidnapping and received a sentence of 33 years to life in prison. He was sentenced on August 15, 2002, and did not appeal.

According to the petition, the first time petitioner challenged any part of his conviction and sentence was on March 25, 2003. In 2003, he filed a motion in the trial court to reduce his sentence and to withdraw his guilty plea, and filed additional motions in the trial court in 2004 and 2005. *Petition*, at Statement of the Case, pp. 1-2. The last of these motions was denied on May 17, 2005.

Petitioner waited more than a year to file his next motion. On June 26, 2006, he filed a petition for post-conviction relief. The denial of that motion, which occurred on July 12, 2006, was the first trial court order from which petitioner appealed. The decision in that case appears on Westlaw, *see State v. Qualls*, 2007 WL 2206895 (Meigs Co. App. June 14, 2007), and it confirms the dates in the petition concerning the post-conviction petition, as well as the fact that petitioner did not appeal his 2002 conviction. The state court of appeals affirmed the dismissal of the post-conviction petition on the ground that it was not timely filed, and the Ohio Supreme Court denied review. *See State v. Qualls*, 115 Ohio St.3d 1444 (Oct. 24, 2007).

According to the petition, the next motion petitioner made was to withdraw his

2

guilty plea. He filed the motion on February 22, 2008. Apparently, on the day it was filed, the trial court denied that motion, citing to its earlier orders filed in 2003 denying similar motions and warning petitioner not to file similar repetitive motions in the future. *Petition*, at Statement of the Case, p. 2.

The final chapter in the story of state court proceedings began when petitioner filed a motion for a *de novo* sentencing hearing on January 15, 2010. He apparently argued that post-release control could not have properly been imposed as part of the sentence on the aggravated murder charge. The State disagreed with that argument, noting that post-release control had been imposed not on the aggravated murder charge but on the kidnapping charge. However, it appeared that there had been a technical error in the sentencing; while the trial judge announced the post-release control sentence on the record, it was not included in the written judgment entry. The State asked the trial court to correct this omission by way of a *nunc pro tunc* entry, which it did on March 29, 2010.

Procedural issues surrounding the imposition of post-release control, and the effect of errors in the process on the validity of a criminal sentence, have plagued the Ohio courts in recent years. *See, e.g., State v. Singleton*, 124 Ohio St. 3d 173 (2009). Petitioner's case presented one of those issues and resulted in a published Ohio Supreme Court decision. *See State v. Qualls*, 131 Ohio St.3d 499 (2012). That decision, issued on March 20, 2012, produced this syllabus: "When a defendant is notified about postrelease control at the sentencing hearing, but notification is inadvertently omitted from the sentencing entry, the omission can be corrected with a nunc pro tunc entry and the defendant is not entitled to

3

a new sentencing hearing." The Ohio Supreme Court noted that petitioner had argued that, due to the omission of post-release control language from the sentencing entry, his sentence was void and that he was entitled to a new sentencing hearing, but it rejected that argument, stating that when the defendant is properly notified at sentencing about post-release control, the omission is clerical rather than substantive in nature, so that all that is needed is a new entry, as long as the correction to the entry takes place (as it did here) before the defendant is released from prison. It also rejected his argument that the original entry, lacking the language about post-release control, was not an appealable final judgment.

The petition in this case appears to have been signed by petitioner on March 18, 2013. While that is slightly more than a year after the Ohio Supreme Court's decision, it is within one year from the date on which petitioner could have filed for a writ of *certiorari* from the United States Supreme Court. Although he does not say so explicitly, it is likely that petitioner would argue that the petition is timely based on the timing of the most recent Ohio Supreme Court decision. That is the limitations question which the Court must address before it directs the filing of a response to the petition.

## II. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

4

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under this statute, the key date to determine is "the date on which the judgment became final."  If more than one year has passed since that date, any §2254 petition filed challenging the state court judgment is untimely and must be dismissed.

A fairly simple set of rules has been developed for determining when convictions entered in the state courts of Ohio become final.  If a criminal defendant does not appeal the judgment of conviction and sentence entered by the trial court, the conviction is final, for purposes of §2244(d), on a date thirty days after the judgment is entered - thirty days being the time allowed by the Ohio Appellate Rules for taking a timely appeal of a

5

judgment entered by the Common Pleas Court.  *See, e.g., Miller v. Warden*, 2009 WL 4806265, *2  (S.D. Ohio Dec. 10, 2009) ("petitioner's judgment of conviction became final ... thirty days after his July 25, 2001 sentence, when the time to file a timely appeal to the state appellate court expired"), *adopted and affirmed* 2010 WL 148144 (S.D. Ohio Jan. 12, 2010), *citing Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.2001); *Marcus v. Lazaroff,* 301 F.3d 480, 481 (6th Cir.2002); Ohio App. R. 4(A).  Because petitioner did not appeal his conviction and sentence, the state court judgment became "final" for limitations purposes thirty days after it was entered, or on September 14, 2002.

As stated in §2244(d)(2), the running of the statute of limitations can be suspended, or tolled, while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  In this context, "properly filed" means that the application was timely and met other state procedural requirements.  *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005); *Artuz v. Bennett*, 531 U.S. 4 (2000).  The Court does not have enough information before it to know whether the motions which petitioner submitted to the state trial court beginning on March 25, 2003 were timely and otherwise "properly filed."  But it does not matter.  According to the petition, the last of those motions was denied on May 17, 2005, and petitioner did not make his next challenge to any part of his conviction or sentence until June 26, 2006.  Because 191 days elapsed between the date the judgment became final and the first post-conviction motion was filed, and more than a year passed between the denial of these motions and the next proceeding filed by petitioner, the statute of limitations ran out in late 2005 even if the

6

motions were proper. If they were not, of course, it ran out on September 13, 2003.

Leaving aside for the moment the motion for a new sentencing hearing which was filed in 2010, the other filings which petitioner made - even if they were all properly filed, and the record suggests they were not - had no effect on the running of the statute of limitations. Once the statute has run, a later proceeding cannot "restart the clock." As the Court of Appeals held in *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003), *quoting Rashid v. Khulmann*, 991 F.Supp. 254, 259 (S.D.N.Y. 1998), "'[t]he tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.'" Further, more than a year passed after the completion of each one of those proceedings without petitioner's filing a federal habeas corpus petition. The only way that his petition could be considered timely is if the state trial court's filing the *nunc pro tunc* entry constituted a new judgment for habeas corpus purposes. If it did, that judgment did not become final until ninety days after the Ohio Supreme Court made its March 12, 2012 ruling (the additional ninety days is added because that is how much time petitioner had to request a writ of *certiorari* from the United States Supreme Court, *see, e.g., Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000)), and this petition, filed less than one year after the expiration of that 90-day period, would be timely.

Unfortunately for petitioner, the statute of limitations does not work that way. It is true that if a state trial court enters an entirely new judgment, replacing the prior judgment,

7

the statute of limitations begins to run anew. *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012). There, the Court of Appeals held that when a prior sentence is vacated and a defendant is resentenced in state court, "the limitations clock in this setting begins after the new sentence." *Id*. at 568. However, in order for petitioner to take advantage of this rule, this Court would have to find that the *nunc pro tunc* sentencing entry which did no more that correct what the Ohio Supreme Court deemed to be a clerical error in the judgment constituted a resentencing and resulted in a new judgment. Clearly, however, that is not what occurred.

Another Magistrate Judge of this Court faced a similar issue in *Quillen v. Warden, Marion Correctional Inst.*, 2013 WL 275973 (S.D. Ohio Jan. 24, 2013). Like the petitioner here, Terrence Quillen, the petitioner in that case, did not appeal his original conviction, which was entered in 2001, but in 2012 he filed a motion to dismiss the indictment on grounds that an error had been made in the sentencing entry. The trial court declined to dismiss the indictment but held a new sentencing hearing at which it notified petitioner that he was subject to a mandatory five-year term of post-release control. A *nunc pro tunc* entry to that effect was filed. The defect in the earlier entry appears to be that the post-release control term was described as being a maximum of five years, rather than a mandatory definite term of five years.

In *Quillen*, the State moved to dismiss the petition on statute of limitations grounds. In opposing the motion, petitioner argued that the statute did not begin to run until the *nunc pro tunc* entry was filed. Magistrate Judge Litkovitz rejected that argument, noting

that "[c]ourts confronted with the question whether a modification to a sentence, as opposed to a re-sentencing, restarts the § 2244(d)(1) (A) limitations period have rejected the argument that any modification to a sentence results in a 'new' judgment for statute of limitations purposes." *Quillen*, *supra*, at *9. Rather, courts look to the totality of the circumstances surrounding the entry of the corrected judgment to see whether, in fairness, it ought to be considered as having replaced or superseded the prior judgment in any meaningful way. She then cites, *see* 2013 WL 275973 at *10, to numerous decisions holding that correction of a clerical error in a sentencing entry is not the equivalent of a new judgment and does not trigger a new one-year period within which to file a petition in federal court under §2254. She also noted that to the extent other decisions had carved out a limited exception to this rule, it was only for claims relating to the new portion of the judgment - such as an amendment to the judgment dealing with sexual predator status - and not for claims dating back to the original sentence which were unrelated to the modification. *See, e.g., Bachman v. Bagley*, 487 F. 3d 979 (6th Cir. 2005). Taking all of these matters into account, *Quillen* held that "the *nunc pro tunc* modifications made ... to petitioner's sentence did not affect the finality of the judgment of conviction and sentence challenged by petitioner, which was entered on June 13, 2001 when he was convicted and sentenced upon entry of his guilty plea" and that his petition was untimely. *Id*. at 13.

The Court is aware that objections have been filed to Judge Litkovitz' Report and Recommendation, *see Quillen v. Warden*, Case No. 1:12-cv-0160, Doc. 17, and that the District Judge has not yet ruled on those objections. Nonetheless, for the reasons set forth

9

in *Quillen*, this Court agrees that the correction of a clerical error dealing with post-release control - an error which the Ohio Supreme Court specifically held was clerical rather than substantive, and which did not even require a new hearing, cannot resurrect claims totally unrelated to that portion of the judgment.  Most of the claims petitioner sets forth in his petition do not relate in any way to the term of post-release control he has been ordered to serve after he is released from custody.  Rather, he seeks to challenge the voluntariness of his guilty plea, the effectiveness of his counsel, and the trial court's refusal to permit him to withdraw it.  These claims are all time-barred.

Petitioner does assert, as one ground for relief, a claim that the imposition of post-release control is void because petitioner was not given a new sentencing hearing.  Most of the authority he relies on is based on state law rather than the federal constitution.  To the extent that petitioner's claim arises under state law, the Ohio Supreme Court has rejected his argument, and that decision is both binding on this Court as to issues of state law, and made on an issue which, because it does not arise under federal law, is not properly raised in a §2254 action.  *See* 28 U.S.C. §2254(a) (a federal court may entertain a habeas corpus petitioner from a person who alleges "that he is in custody in violation of the Constitution or laws or treaties of the Untied States").  This Court has rejected similar claims in the past as arising solely under state law.  *See Carter v. Warden, Chillicothe Correctional Institution*, 2012 WL 2601760, *12  (S.D. Ohio July 5, 2012), *adopted and affirmed* 2012 WL 4056850 (S.D. Ohio Sept. 14, 2012).  If petitioner is raising some type of Double Jeopardy claim relating to the new sentencing entry, that claim is clearly meritless, because

the Double Jeopardy Clause does not apply to noncapital sentencing proceedings. *See Monge v. California*, 524 U.S. 721 (1998) . If he is asserting a Due Process violation, that claim also lacks merit because he was given notice of the correct term of post-release control at the initial sentencing hearing; nothing in the federal Due Process Clause would appear to require that before the state court corrected its entry, a new hearing would have to be held at which petitioner would have been given the exact same notification as at the first one. In short, if petitioner is actually raising federal constitutional claims concerning the state court's resentencing proceeding, those claims fail on their merits even if they have been timely presented.

### III.  RECOMMENDED DISPOSITION

For all of the reasons recited above, it is recommended that the Court **DENY** the petition and **DISMISS** this case.

### IV.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this

matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

        /s/ Terence P. Kemp  
        United States Magistrate Judge